9

Misty Perry Isaacson, CA SBN 193204
**PAGTER AND PERRY ISAACSON**
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, California 92701
Telephone: (714) 541-6072
Facsimile:　(714) 541-6897
Email: misty@ppilawyers.com

Attorneys for Hillary Bjorneboe

IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>TRAVIS J. BREWER and<br>AMBER DENISE BREWER,<br><br>　　　　　　　　　Debtors.<br><br>HILLARY BJORNEBOE,<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>TRAVIS J. BREWER and<br>AMBER DENISE BREWER,<br><br>　　　　　　　　　Defendants. | Case No.: 15-13444<br><br>Chapter 7<br><br>Adv. No.<br><br>COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6) AND FOR DECLARATORY RELIEF |

　　　　HILLARY BJORNEBOE (the "Plaintiff") hereby complains against Defendants TRAVIS J. BREWER and AMBER DENISE BREWER (collectively "Defendants" or "Debtors") as follows:

///

///

## JURISDICTION

1. This adversary proceeding arises out of and is related to the above-captioned chapter 7 case before the United States Bankruptcy Court.

2. This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and 28 U.S.C. §1334.

3. Venue is proper under 28 U.S.C. §1409(a) since Debtor's Chapter 7 is pending in this district.

## PARTIES

4. Plaintiff, Hillary Bjorneboe (the "Plaintiff") is an individual residing in Kern County, California.

5. Defendant, Travis J. Brewer ("Travis"), is an individual residing in Kern County and is a debtor in the above referenced bankruptcy case.

6. Defendant, Amber D. Brewer ("Amber"), is an individual residing in Kern County, is the wife of Travis, and a co-debtor in the above-referenced bankruptcy case.

## GENERAL ALLEGATIONS

7. The Defendants commenced this bankruptcy case by filing a voluntary petition under chapter 7 of title 11 of the United States Code in the Eastern District of California, Fresno Division on August 31, 2015 (the "Petition Date".)

8. Plaintiff comes from a family with a long history of law enforcement in Kern County.

9. Plaintiff knew she wanted to be a Bakersfield police officer since she was in sixth grade. Being a police officer is the only profession Plaintiff has any desire to pursue.

PPI Law
525 N. Cabrillo Park Drive, Suite 104
Santa Ana, CA 92701

(714) 541-6072

10. Plaintiff was hired as a Police Trainee by the City of Bakersfield ("Bakersfield") and Bakersfield Police Department ("BPD") on March 10, 2014. On August 15, 2014, Plaintiff was promoted to a police officer.

11. All new police officers are assigned a Field Training Officer ("FTO"). Plaintiff's assigned FTO was Travis. Plaintiff's first day of field training was September 4, 2014.

12. During the first five weeks of Plaintiff's Field Training, under the supervision of Travis and fellow FTO Steven Glenn ("Glenn"), she was subjected to sexual comments by both Travis and Glenn that were unwanted, offensive, and made her feel uncomfortable.

13. Travis and Glenn would repeatedly ask Plaintiff what she did in high school, because she never smoke or drank. Plaintiff informed Travis and Glenn that she just hung out with friends and family. Travis inquired if she had ever skipped school to "do something cool, like be a stripper or something?" Plaintiff replied that she had not. Travis said that it would be real cool if she was a stripper. Not knowing how to respond to that comment, Plaintiff said nothing.

14. On another occasion, Travis asked her how many people she dated. Plaintiff told him that she had dated three males, to which Travis responded, "oh, so you're a whore." Plaintiff was deeply humiliated and did not know how to respond, so she said nothing.

15. On another occasion, Travis and Glenn asked her specifics about the males she dated. She was repeatedly asked why she broke up with one particular male, to which Plaintiff finally responded that she broke up with this person because she refused his sexual advances. Both Travis and Glenn laughed at Plaintiff and indicated that they would have broken up with Plaintiff too because she would not engage in sexual intercourse. After this incident, both Travis and Glenn asked Plaintiff on more than one occasion if she was a "gay" or a "lesbian."

16. On another occasion, Travis and Glenn asked Plaintiff if she had any friends, to which she gave the name of her best friend. They asked to see a picture of this friend "to make sure she wasn't making it up." Travis and Glenn asked to see the pictures of this friend on her phone, which she allowed them to do, despite the fact that Plaintiff felt that she did not have the option to tell them no, as they were her commanding officers. After viewing Plaintiff's pictures, both Travis and Glenn commented that they were more confused about Plaintiff's sexuality then before.

17. Travis and Glenn also made a comment to Plaintiff about how trainees are supposed to sleep with their FTOs. Glenn would call Plaintiff "sweetheart" when he wanted to make Plaintiff feel like she was doing something wrong and said it in a belittling way.

18. All of the above mentioned conduct made Plaintiff feel extremely humiliated, offended, incompetent, belittled, and embarrassed – so much so that she dreaded going to work with Travis and Glenn. Travis and Glenn broke Plaintiff's spirit causing her to second guess herself both personally and professionally.

19. On or about October 13, 2014, an incident occurred between Plaintiff and Travis, which resulted in an Internal Affairs ("IA") investigation.

20. After a stop on October 13, 2014, drugs were recovered from a detainee, including marijuana and a methamphetamine smoking pipe. Travis told Plaintiff to keep the marijuana, methamphetamine smoking pipe and the meth in the pipe in one of her gloves and put it in her pants pocket. Following the strict instructions of Travis, Plaintiff did as she was told. Travis then told Plaintiff to call Sergeant Fidler and "run down the arrest," but instructed Plaintiff not to mention the marijuana "because we are not going to book the marijuana." Plaintiff was immediately confused and alarmed by these instructions as they directly controverted the

training she had received about booking all evidence retrieved from a suspect. Confused, Plaintiff asked Travis why he was instructing her to do this and what they were supposed to do with the marijuana. Travis told Plaintiff not to worry about it. Plaintiff did worry about it because she knew it was unethical.

21. Per Travis's instructions, Plaintiff called Sgt. Fidler in front of Travis. In making the call, she purposely told Sgt. Fidler about the items recovered, including the marijuana, in hopes that Travis would do the right thing and report the marijuana. After the call, Travis was very upset with Plaintiff and yelled at her and asked her why she told Sgt. Fidler about the marijuana. During the rest of the shift, Plaintiff continued to inquire with Travis what would be done with the marijuana, to which Travis continued to tell her not to worry about it.

22. Travis then instructed Plaintiff to prepare the report. Once inside the BPD substation, Travis whispered to Plaintiff to bring him his computer and go put the marijuana in the back of the patrol vehicle. Knowing that Plaintiff was required to follow her FTO's instructions, Plaintiff reluctantly put the marijuana in the back of his patrol vehicle. Travis's patrol vehicle was assigned to him and he drove it to and from his residence. Glenn and another officer helped Plaintiff book the meth pipe and methamphetamine. Plaintiff continued to be very concerned and worried that no one was booking the marijuana. Plaintiff thought that maybe there was some policy or procedure that she was unaware of as to why the marijuana was not being booked, including the chance that the person whom they seized the drugs from was being used as an informant. Before the end of the shift, Travis told Plaintiff that she had a "ton of errors" in her report and that she needed to learn how to properly prepare a consensual encounter report. Plaintiff was unaware of who ultimately sent the report in.

PPI Law
525 N. Cabrillo Park Drive,
Suite 104
Santa Ana, CA 92701

(714) 541-6072

23.     The entire weekend, Plaintiff was distraught, stressed, scared, and confused. Plaintiff knew that she had to do something because she no longer trusted Travis and felt that she was being used to engage in illegal practices.  That weekend, Plaintiff confided to her neighbor, who is a retired Sergeant for BPD, and his wife, who also works for the BPD, about what had happened.  Her neighbors told her that she needed to report this issue to her Sergeant.  After speaking with Plaintiff, the neighbor's wife reported to Senior Officer Pflugh what Plaintiff had told her about Travis.  That same day, Plaintiff received a call from Officer Lieutenant West who told her to meet him at the station.  Plaintiff complied and Officer West walked her directly to IA.

24.     Plaintiff was assigned a Bakersfield Police Officers Association Union Representative ("Union Rep"). The Union Rep spoke briefly with Plaintiff and left the room. Upon returning, he suggested that Plaintiff lie to the IA officers by telling her to tell IA that she was just emotional and overreacting due to the stresses of Field Training.  Upon hearing the Union Rep's instructions, Plaintiff attempted to tell him what happened, but he did not her to tell him what really happened.  Shocked that her own Union Rep would tell her to lie, Plaintiff ignored his instructions and when questioned by IA, told them exactly what transpired.  On October 17, 2014, Plaintiff was placed on administrative leave.  Plaintiff was told that she was being investigated for a violation of Penal Code §§ 135 (destruction of evidence) and 118.1 (falsifying a police report).

25.     After a full IA investigation over a three month period of time, Plaintiff was cleared of any misconduct and was reinstated effective January 14, 2015.

26.　Plaintiff returned to work and on March 9, 2015, was notified, in writing, by her new FTO that she completed Patrol Phase One and was cleared to continue on to the next phase. Two weeks later Plaintiff was terminated.

27.　Plaintiff did everything in her power to force Travis to report and book the marijuana. Travis was the one and only person with final authority regarding what was included in all reports, including the report at issue with IA. Travis is the one that unilaterally elected to falsify a report and hide marijuana as he solely submitted and approved every report and Field Arrest Data form completed by Plaintiff.

28.　Since her termination, Plaintiff has applied for work as a police officer in other counties. Her efforts have been futile as a result of her wrongfully being placed on the Brady Witness System. Plaintiff's lifelong dream of being a police officer and protecting and serving her community is forever lost as a result of Travis's actions.

### FIRST CLAIM FOR RELIEF
**[Willful and Malicious Injury - 11 U.S.C. §523(a)(6)]**
**(Against Defendant Travis J. Brewer)**

29.　Plaintiff hereby incorporates by this reference paragraphs 1 through 28 inclusive, and realleges these paragraphs as though set forth in full.

30.　Travis deliberately, intentionally, and maliciously subjected Plaintiff to unwanted harassing conduct because she is a woman.

31.　Travis deliberately, intentionally, and maliciously subjected Plaintiff to sexual harassment that created a hostile work environment during employment with BPD and Bakersfield. The conduct was offensive and unwelcome to Plaintiff and interfered with Plaintiff's ability to work.

PPI Law
525 N. Cabrillo
Park Drive,
Suite 104
Santa Ana, CA
92701

(714) 541-6072

- 7 -

32. Travis's deliberate, intentional, and malicious conduct was severe and pervasive to Plaintiff.

33. A reasonable woman in Plaintiff's circumstances would have considered the work environment created by Travis to be hostile or abusive.

34. The aforementioned conduct by Travis was willful and in conscious disregard of Plaintiff's rights and he knew or believed that injury to Plaintiff was substantially certain to occur as a result of his conduct.

35. As a direct and proximate result of Travis's discriminatory, harassing actions, and other conduct against her, the terms, conditions, and privileges of her employment were negatively affected. These changes resulted in an abusive work environment for Plaintiff. Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages and other employment benefits, emotional distress, humiliation, anxiety, depression, stress, loss of sleep, and psychological trauma, the exact amount and/or extent of which will be proven at trial.

36. Travis intended and was aware that his conduct would injure Plaintiff without just cause or excuse.

37. The damages resulting from the acts alleged above are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### SECOND CLAIM FOR RELIEF
### [Declaratory Relief]
### (Against all Defendants)

38. Plaintiff hereby incorporates by this reference paragraphs 1 through 37 inclusive, and realleges these paragraphs as though set forth in full.

///

39. The debt owed by Defendants to the Plaintiff is a community claim under 11 U.S.C. §§ 101(&) and 541(a)(2).

40. The Defendants' community property is liable to Plaintiff for the community claim pursuant to California Family Code § 910(a).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff request that judgment be entered against the Travis as follows:

a. That the Court determine that the damages proximately caused by Travis's actions, to be determined according to proof at trial, constitute a debt that is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

b. For a determination that the debt owing Plaintiff is a community debt and that the pre-petition and post-petition community property shall remain liable for the debt owed to Plaintiff;

c. For such other and further relief as the Court deems just and proper.

Date: December 16, 2015 **PAGTER AND PERRY ISAACSON**

By: /s/ Misty Perry Isaacson, CA SBN 193204
Misty Perry Isaacson, Attorneys for
Plaintiff, Hillary Bjorneboe